NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1726
_____

UNITED STATES OF AMERICA

v.

DAWAAN EDWARD SMITH,
                                    Appellant
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 2-07-cr-00119-001)
District Judge: Honorable Nora B. Fischer
_____

Submitted Under Third Circuit LAR 34.1(a)
September 19, 2017

Before: AMBRO, KRAUSE, and SCIRICA, Circuit Judges

(Opinion filed: September 20, 2017)
_____

OPINION[*]
_____

AMBRO, Circuit Judge

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Is hearsay evidence allowed in a hearing to consider the revocation of supervised release? The District Court held yes in this case, and we agree.

I.

In 2008, Dawaan Smith pled guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and the District Court sentenced him to a term of 84 months. In addition, Smith received three years of supervised release, during which he was instructed not to commit another federal, state, or local crime and to refrain from any unlawful use of a controlled substance.

However, in August 2015, Smith was charged with simple assault related to a domestic violence incident involving his girlfriend, Candace Copeland. And in November 2015 Smith was charged with making false reports and disorderly conduct, again related to a domestic dispute with Copeland. In December 2015 all three charges were reduced to non-traffic summary offenses, to which Smith pled guilty.

In February 2016, police officers were called again regarding a domestic dispute between Smith and Copeland. Smith was charged with simple assault, and the Government sought to revoke his supervised release.

At the revocation hearing, the Government called Officer Cunic, who responded to the August 2015 domestic assault. He testified that he observed a bite mark on Copeland's back, blood on her chin, and scratch marks on her neck. Officer Cunic also testified that Copeland had told him that Smith had choked her during an argument. The Government's next witness, Jeffrey Sciarrino, was Smith's probation officer. Sciarrino testified that in October 2015 Copeland told him about the August assault. Sciarrino also

2

testified that Smith's previous probation officer, Marcus White, received a report from Copeland that Smith had thrown her to the ground. The Government also introduced a police report from the February 2016 assault that memorialized the officer's observations of Copeland spitting up blood and her statements that she landed on her pregnant stomach when Smith threw her to the ground.

Smith testified on his own behalf. He admitted that during the August 2015 incident he "tussled" with Copeland but denied assaulting her. Smith also admitted that he called Copeland from jail in an effort to convince her to recant her testimony. Copeland did not testify at the revocation hearing, nor did she testify at any of Smith's earlier criminal proceedings. However, despite Copeland's absence, defense counsel did not object to any of the Government's evidence as hearsay.

The District Court, relying on the preceding testimony and evidence, found that Smith committed four violations of the conditions of his release: one violation for using controlled substances,[1] and three violations for the August, November, and February incidents involving Copeland.

## II.

We review the District Court's decision for plain error because defense counsel did not object to the introduction of hearsay evidence of Smith's criminal conduct. *United States v. Paladino*, 769 F.3d 197, 200 (3d Cir. 2014). "For reversible plain error to exist, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and

---

[1] Smith tested positive for marijuana in July 2015 and testified that he used marijuana during his supervised release. He did not challenge this violation at the revocation hearing and does not challenge it on appeal.

3

(4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 201 (internal quotation marks and citation omitted).

"The revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). "This limited right to confrontation stems from the Fifth Amendment's Due Process Clause, not from the Confrontation Clause of the Sixth Amendment." *United States v. Lloyd*, 566 F.3d 341, 343 (3d Cir. 2009). Thus, at a revocation hearing the defendant is to be provided "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C). The Advisory Committee Notes state that Rule 32.1(b)(2)(C) "recognize[s] that the court should apply a balancing test at the hearing itself when considering the [defendant]'s asserted right to cross-examine adverse witnesses. The court is to balance the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it." *See also Lloyd*, 566 F.3d at 343–44. We have interpreted that balancing test to "consider both the reliability of proffered hearsay and the cause why a witness is not produced." *Id.* at 344. Indicia of reliability can include "physical evidence, independent testimony, or admissions [that] support the statements[.]" *Id.* at 345.

Smith argues that the District Court failed to provide him "the right to confront and cross-examine adverse witnesses" at the revocation hearing because Copeland never testified, App. Br. at 10 (quoting *Morrissey*, 408 U.S. at 489), and instead relied on

4

"hearsay alone" that had "no corroboration at all." App. Br. at 8. He ignores, however, the corroborating evidence from officers and police reports that paint a reliable yet disturbing picture of Smith's assaultive behavior against Copeland. Officer Cunic's observations of Copeland's fresh injuries corroborated her contemporaneous reporting that Smith assaulted her. Further, by Smith's own admission, he was in a physical altercation with Copeland before police arrived. That abusive behavior was evident also in the probation report of Smith throwing Copeland to the ground and officers observing her spitting up blood. As to the Government's good cause for denying Smith's right to confrontation, Smith has only himself to blame—his phone calls from jail urging Copeland to recant her initial police statements were enough to deter her from appearing.

In this context, the District Court's consideration of Copeland's out-of-court statements was appropriate in light of the reliability of the detailed, corroborated statements she made to law enforcement, the observations of responding police officers, and Smith's self-incriminating testimony. Thus we affirm.